Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington in Idaho. On behalf of Mr. Prince, I will be attempting to reserve five minutes for rebuttal. With the Court's permission, I believe that Issues No. 1 and No. 2 have been adequately briefed. I wanted to concentrate on Issue No. 3 regarding essentially the categorical approach. In addressing that argument, I would note that the government, in its answering brief, made a number of concessions. The government essentially conceded that California robbery does not require as an element the use or threatened use of physical force against another. We agree. The government concedes that robbery is not an enumerated offense. We agree. The government concedes that the modified categorical approach is of no value here because there are simply inadequate documents to do so. Again, we agree. We would also argue that the statute is not divisible. So the only issue is whether California robbery qualifies as an act of predicate under the residual clause, which states that crimes which otherwise involve conduct that present serious potential risk of physical injury to another can qualify. It does not because of the multiple ways that the California statute is overbrought. In looking at California Penal Code Section 211, it might appear at first glance that it states a standard robbery type of statute that would involve the use of force. The cases we've cited, the California cases, make it clear, however, that that is not the case. Under California law, all that is required is some amount of force beyond that necessary to essentially pick up the item. I would point specifically to the Garcia case in which a polite tap, and that is essentially a quote, was sufficient use of force to justify a robbery. As we know, under federal law, violent physical force is what is required under the use of force. So California robbery, in terms of force, is simply overbroad. But we can also look to California Penal Code Section 212, which defines fear. Fear is a term used in California Penal Code Section 211. The fear that's involved in California robbery is fear of an unlawful injury to person or property of a person robbed, or to any relative or member of family. We have several differences there between any possible violent felony. We have the potential injury being to property as opposed to a person. We have potential injury to someone other than the alleged victim or someone other than the alleged victim's property. And it need not be immediate. It could be as simple as saying, I want that piece of, I want what you're holding. If you don't give it to me, I will key your car. I will spray paint your mother's house a month from now. That is sufficient under California statutes to have a robbery be committed. This is simply not the type of offense that is implicated by the residual clause of ACCA. Now, there's a tendency, and the government at one point in its brief lists a number of California cases, that I would say present bad facts, violent robberies and the like. But aren't we supposed to look at the ordinary case? Don't we have very clear guidance that we look at the ordinary case? I completely agree, Your Honor. And the ordinary case, I believe, is determined by the elements. California has simply decided to cast a wide swath in defining what is robbery. When we look to those elements, we see it can be fear to property. It can be fear to essentially a mere touching, an offensive touching. It would be sort of a misdemeanor assault. California, the legislature, has seen fit to define its offense in a way that is simply well beyond that which generic offenses define. Does California define robbery in a way that is significantly different from the definition used in Nevada? Your Honor, I believe it does through case law. I agree. If you look at the Nevada definition, it seems similar. But, again, we see cases in California that all but eliminate the use of force. But sometimes you're arguing that we look just at elements and sometimes you're arguing that we do look at the ordinary case. It seems to me your argument is inconsistently shifting. I certainly don't mean to do that, Your Honor. And what I'm suggesting is that the ordinary case is defined by the elements of the offense. Okay, and that's why I asked the question, Counsel. Maybe it wasn't clear, but that's why I asked the question about how does California's definition of robbery meaningfully, how is it meaningfully different from Nevada's definition of robbery? Your Honor, my understanding of Nevada's definition, and I'm not a Nevada lawyer, is that California's definition has a broader use of the term force. So by implicating that broader definition of the term force, one would, again, sweep up into the definition the situations in which there is a mere offense of touching or the like. Again, the point being that while we understand that there are offenses which could undoubtedly be considered violent, that isn't the issue here. That would not qualify. The issue here is whether the elements establish in their normal case that it would qualify, and it is our position that it clearly does not. We know that by looking at Begay, which requires purposeful, violent, and aggressive conduct against another. In reviewing these elements, we simply don't reach the elements of California burglary. We don't reach that type of conduct. And I would note in Begay, an issue that was raised in the government's brief, was similarity to extortion. Again, we don't have that similarity under the California statute. Begay talked about extortion, and it talked specifically about obtaining property, committing the offense with the purpose of obtaining property through the threat of inflicting bodily injury. And that is not the type of situation we have here. There isn't a requirement that bodily injury be threatened or inflicted. It can be property injury. That's true of extortion as well, right? Extortion under Begay, I believe it's at 553 U.S. 145, talks about the obtaining of property through the threat of bodily injury. That's the generic definition that's cited in Begay of extortion. So since you can obtain property in California through the threat of property injury as opposed to bodily injury, no bodily injury need be threatened at all. It isn't the same as extortion. But it is the same as Nevada law, and we've had occasion to opine on Nevada law, right? That is correct, Your Honor. And looking at my time, I would ask the opportunity to review that while my opponent is speaking, and then perhaps I can provide the Court with a more cogent answer. I would also point out that the government's comparison to burglary is not entirely accurate, in that any crime, if discovered, in theory, could lead to violence. The government seems to say that since a person could, in fact, respond violently to being threatened with a crime, that that is sufficient. And if we look at the cases discussing burglary, I think what we see is the idea that somebody is confronted either in the home or at least in a closed situation in a building by a would-be felon, and that that situation is apt to create a violence or potential for violence. Here, under this robbery statute, it effectively applies to purse snatching, as we cited, as well as perhaps even a pickpocketing situation if a person is attempting to get their property back. So, again, we would argue that it doesn't meet the definition or doesn't meet the elements of a typical burglary because we don't have that type of confrontation within a closed circumstance. Unless the Court has any particular questions, I would reserve the remainder of my time. That's fine. Now we'll turn to the United States, and we have Mr. Jacobs. May it please the Court. That is correct, Your Honor. George Jacobs on behalf of the United States. Your Honors, the District Court correctly concluded that Mr. Prince's 1986 California conviction for attempted robbery in violation of Section 211 of the California Penal Code constituted a violent felony under the Armed Career Criminal Act. The United States' position is that that crime categorically constitutes a violent felony under 924E2B2 because it otherwise presents conduct that presents a serious potential risk of physical injury to another. Congress, in enacting that statute, did not require metaphysical certainty, and it used the term potential risk. And in the ordinary case, attempted robbery presents a serious potential risk of physical injury to another person. In response to Mr. Campbell, under the statute, in applying the categorical approach, that approach does not require a risk of physical injury for every factual offense. It only requires the potential under that residual provision of the Armed Career Criminal Act. Congress, in enumerating the crimes of burglary, arson, extortion, use of explosives, set a baseline. The United States admits that attempted robbery creates even a greater potential risk of physical injury than one of the baseline crimes enunciated in the statute, burglary. So we're required under Chandler, when we're looking at a residual clause case, to decide whether or not this conviction, in this case for attempted robbery, presents a degree of risk that is similar in kind. How should we make that comparison? Your Honor, this Court has previously held in the Becerril-Lopez case that robbery is similar to extortion. What about the Chandler case? Did you look at that? Your Honor, I did not. I did not look at Chandler. Because I think you're citing a 2002 case. That's why I asked. Does that sound right to you? Yes. I think Becerril-Lopez is a 2002 case. Yes, I believe it is, Your Honor. All right. So, Your Honor, the United States believes that, in light of the opinion in Becerril-Lopez and actually in the Harrison case, which is applying the Nevada statute, which the Court said is very similar to the California statute, Mr. Prince's conviction for attempted robbery does constitute a violent felony under the residual provision. Are there any other questions? Well, I have this question, Mr. Jacobs. Although Mr. Campbell, for the appellant, wanted to rest on the briefs on the first two issues, involving whether there was error in letting the jurors examine the felony holster for the issue of extrinsic evidence, you're free to comment on those if you want to, but you don't need to. You can also rely on the briefs. It's up to you. Your Honor, I believe the United States laid out its argument in its brief and its position is that the viewing of the firearm and the holster by the jury did not constitute extrinsic evidence. Both those items were admitted evidence in court, and as I cited some case law in my brief, the Court did not abuse its discretion in allowing the jury to come into the courtroom and view that evidence. Thank you, Your Honor. Counsel, what was the significance to the case of whether or not the gun fit into the holster? If we were to find that one aspect of this was error and we were going to go on to whether it was harmless error, what was the significance of the jurors who were trying to fit the gun into the holster? Your Honor, the evidence in trial showed that when the firearm was seized by law enforcement, it was seized from the trunk of a vehicle outside of Mr. Prince's residence. When the firearm was seized, it was seized under some blankets in the trunk of the vehicle. There was a holster and the .22-caliber Smith & Wesson firearm six-shot in that trunk. There was testimony by one of the law enforcement officers that that firearm did fit into the holster. The United States, during the presentation of its case, didn't actually ask the officer to do a demonstration in fitting the firearm into that holster because, for safety reasons, there was a plastic strip tie in the firearm for safety reasons. So that's what the evidence adduced at trial was. Both items were admitted into evidence. There was testimony from the officer that that firearm did actually fit into that holster. And then during their deliberations, the jury had requested to see those items. But what difference does it make whether it fits in or it doesn't fit in because the crime is having the gun? That is correct, Your Honor. It absolutely makes no difference. Counsel, could I ask a couple of follow-up questions? Wasn't there a justification instruction in this case? There was, Your Honor, yes. I understood there was testimony that it was Mr. Prince's car. That is correct, Your Honor. And then I further understood the testimony to be that the neighbor who saw Mr. Prince with the gun testified that he had the gun, but not the holster. That's correct, Your Honor. So I understood that the circumstantial connecting of the dots, and I had the same question as Judge Wardlaw, so I'll ask both counsel to correct me if I'm wrong. But I understood that the inference is that rather than Mr. Prince perhaps having taken the gun away to disarm someone, consistent with a justification defense, that because the holster was already in the trunk, there was an inference then that that was his gun. Yes, Judge Christian, that is correct. It's truly a question. I'm not sure I've connected these breadcrumbs correctly, but that's what I understood.  Mr. Eller, the neighbor, didn't his testimony, as I recall, he never saw the holster. At one point he did see Mr. Prince holding a firearm. Right. That evening. All right. And he heard arguing, and that is correct. There was no, the neighbor never saw the holster. He saw the firearm. Okay. Thank you very much for that. Okay. Thank you, Mr. Chief. Thank you, Your Honors. Mr. Campbell, you've got several minutes reserved. Yes, Your Honor. Are we misunderstanding the holster's significance? Your Honor, I think Your Honor's understanding is essentially accurate. In essence, there was a, there was what appeared to be a confrontation, a loud argument between Mr. Prince. If you think that's good enough, I don't mean to take you, I realize you didn't even want to speak to these first two issues, but unless you want to correct me, I'll just leave it at that. I think Your Honor has it correct. I try to guess which issues to concentrate on. Sometimes I guess wrong. But returning to the Court's questions about Nevada, the Harris case, as I see it, relies on, to a fair extent, on the Becerra-Lopez case that the government had mentioned. And Becerra-Lopez is actually a case dealing with the Guideline 2L2.1, in which both robbery and extortion are enumerated offenses. We don't have that situation here. So I believe that to the extent that Harris, in discussing Nevada, relies on Becerra-Lopez, it's simply not applicable because here we're dealing with a residual clause, whereas there we were dealing with simply the confluence of two enumerated offenses. So from that perspective, we have a different situation. Secondly, I would note, in reviewing that per curiam in Harris, talking about Nevada, it did discuss that the degree of force used under Nevada law is that which is necessary to compel acquiescence to the taking or escaping. I think, once again, that is different in that we're combining a level of force in order to carry out a taking. In California, we simply don't have that. We have just the application of any force, necessary or not, for whatever purpose beyond simply picking up the items. Unless the Court has any other questions, I think we've essentially covered our arguments. Does Kristin? No, thank you. Board line questions? Yes, thank you. I think that does it. We thank both appellant and appellee, Mr. Campbell and Mr. Jacobs, for your fine arguments. Thank you. And the case of the United States v. Prince shall be submitted. And the Court will take a recess now.
judges: WARDLAW, GOULD, CHRISTEN